DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Santos Ramos appeals from the decision of the Lorain County Court of Common Pleas, denying his Crim.R. 32.1 motion to withdraw his guilty plea, made prior to sentencing. This court affirms.
 I.
On October 28, 1997, Ramos was indicted for aggravated riot, a fourth degree felony in violation of R.C. 2917.02(A)(2), and two counts of aggravated menacing, a first degree misdemeanor in violation of R.C. 2903.21(A). Ramos was also indicted for using a firearm in committing the underlying felony, a specification defined in R.C. 2941.145. Ramos secured his own counsel. According to Ramos, on April 24, 1998, his defense counsel advised Ramos that if he proceeded to trial he would likely be convicted and would receive the maximum sentence. Defense counsel advised Ramos to plead guilty, and Ramos pled guilty that same day at the final pretrial hearing. At the plea hearing on April 24, 1998, the court advised Ramos that he was waiving certain of his constitutional rights, and it advised Ramos of the possible sentences that could be imposed.
Prior to sentencing, however, Ramos secured another attorney and he filed a motion to withdraw his guilty plea pursuant to Crim.R. 32.1. Ramos filed several affidavits in support of the motion, alleging ineffective assistance of counsel and that Ramos had insufficient time to properly consider his plea.
The trial court held a hearing on Ramos' motion to withdraw the guilty plea, and then denied the motion. The court sentenced him to three years on the gun specification, to be served prior to and consecutive to his sentences of six months for each of the three underlying offenses. The lesser sentences were to be served concurrent with one another. Ramos filed the instant appeal. He asserts as error that (1) the trial court abused its discretion in denying his motion to withdraw the guilty plea, and (2) the trial court erred when it advised Ramos that he would be eligible for judicial release after three years. We will address the assignments of error in reverse order.
 II. II. THE TRIAL COURT ERRED WHEN IT ADVISED THE APPELLANT THAT HE WOULD BE ELIGIBLE FOR JUDICIAL RELEASE AFTER HE SERVED THE MANDATORY FIREARM MINIMUM.
At the plea hearing, the trial court advised Ramos that if he pled guilty, he would have to serve the mandatory three-year sentence for the firearm specification, plus "whatever the time is to judicial release" before he would be eligible for judicial release. On appeal, Ramos suggests that the statutory provisions for mandatory sentences and judicial release are sufficiently ambiguous that he may be required to first serve the sentences on the underlying offenses, and then serve the three years on the firearm specification. If so, the trial court misinformed him during the plea hearing, and Ramos' guilty plea was not knowing and voluntary. As supporting authority, Ramos submits appellate decisions involving the issue of shock probation, a form of early release from prison that predated the current judicial release process. The statute governing shock probation was no longer in effect at the time of the instant offenses. Ramos acknowledges that these cases may not be controlling, but suggests that the statutory scheme for judicial release is unclear. We find that this assignment of error is without merit.
With the passage of S.B.2, effective July 1, 1996, the statutory scheme for mandatory sentencing and eligibility for judicial release changed. R.C. 2929.14(E)(1) now states "[i]f a mandatory prison term is imposed upon an offender pursuant to division (D)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony * * *, the offender shall serve the mandatory prison term consecutively to and prior to the prison term imposed for the underlying felony." The mandatory sentence for a firearm specification is not subject to reduction by judicial release. R.C. 2929.14(D)(1)(a).
The statute governing judicial release defines an "eligible offender" as one who has been convicted of or pled guilty to a felony, who was sentenced to a mandatory prison term and to another consecutive prison term of ten years or less, and who has served the mandatory term. R.C. 2929.20(A)(1)(c). Accordingly, at the end of his mandatory sentence for the firearm specification, Ramos will be an offender eligible for judicial release. He may apply for judicial release no earlier than thirty days nor later than ninety days after his mandatory term is completed. R.C. 2929.20(B)(1) and (4). At the plea hearing, the judge advised Ramos that he would have to serve his sentence for the firearms specification first, and then he would be eligible for judicial release, subject to his good behavior while incarcerated. This comports with the statutory provisions for judicial release.
Ramos has offered no authority to support the proposition that R.C. 2929.14(E)(1) and R.C. 2929.20 require him to serve the sentences for the underlying offenses prior to that for the firearm specification. Nor has this court found authority to support such a construction. We conclude that the trial court properly advised Ramos of his eligibility for judicial release and we overrule his second assignment of error.
 III. I. THE COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO WITHDRAW THE PLEA OF GUILTY AND TO REINSTATE THE TRIAL BECAUSE HIS ATTORNEY FAILED TO INTERVIEW WITNESSES BEFORE ADVISING THE APPELLANT TO PLEAD GUILTY AND DID NOT GIVE THE APPELLANT SUFFICIENT TIME TO CONSIDER WHETHER TO PROCEED TO TRIAL OR ENTER A PLEA OF GUILTY.[1]
Ramos' first assignment of error asserts that the trial court should have permitted him to withdraw his guilty plea because the plea was not knowing and voluntary. Ramos challenges the quality of his plea for two reasons: (1) he did not have sufficient time to consider the plea, and (2) his plea was based on ineffective assistance of counsel, who failed to advise Ramos that he had not interviewed potentially helpful defense witnesses.
This court has stated that a pre-sentence motion to withdraw a guilty plea should be freely granted. State v. Rosemark (1996),116 Ohio App.3d 306, 308, quoting State v. Xie (1992), 62 Ohio St.3d 521,527. However, "the decision to grant or deny a pre-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court." Xie, 62 Ohio St.3d at paragraph two of the syllabus. An appellate court will not reverse the denial of a motion to withdraw a guilty plea absent an abuse of discretion. Id. at 527. To find an abuse of discretion, this court must find that the trial court's decision was "unreasonable, arbitrary or unconscionable." Id., quoting State v. Adams (1980),62 Ohio St.2d 151, 157.
First we consider Ramos' assertion that he had too little time to consider his plea prior to entering it. The final pretrial was scheduled for 9:30 a.m. on the Friday prior to the scheduled Monday trial date. Ramos' affidavit states that at the final pretrial conference, his counsel unexpectedly advised Ramos to plead guilty, because if convicted at trial, he could receive sentences totaling seven years. Ramos' affidavit asserts that he requested more time to consider his plea, but was told (apparently by his attorney) that he had to decide at once whether to plead or proceed to trial. Ramos agreed to plead guilty, and his plea was entered that morning.
"When a petitioner suggests that his guilty plea was not voluntary, the `record reflecting compliance with Crim.R. 11 has greater probative value than contradictory affidavits' and other documents." (Alteration in original.) State v. Pratts
(July 15, 1998), Summit App. No. 18705, unreported, at 4, quotingState v. Moore (1994), 99 Ohio App.3d 748, 755-56. The transcript of the plea hearing reveals that the trial court thoroughly explained to Ramos that even if he went to trial, the most time he would receive, if found guilty on all counts and the firearms specification, would be four and a half years. The court also explained to Ramos that, pursuant to a guilty plea, the minimum sentence he would serve was three years. The court then asked Ramos, "Have there been any promises or representations made to you?" Ramos replied, "No, Your Honor." The court then asked him if the plea was voluntary, if that was what he wanted, and if he had any further questions for the court. Ramos indicated that he had no questions and that he wanted to plead guilty.
Thus, the record shows that the trial court thoroughly complied with the requirements of Crim.R. 11 for accepting a guilty plea. The record also contradicts Ramos' assertion in his affidavit that he entered a plea hurriedly, with the understanding that if he proceeded to trial he might be sentenced to seven years of imprisonment. Given this disparity, this court cannot say that the trial court abused its discretion in denying Ramos' motion to withdraw his plea on the basis of insufficient time.
Ramos' motion to withdraw also alleged ineffective assistance of counsel, specifically that his counsel had not interviewed potentially beneficial defense witnesses and that counsel failed to properly advise Ramos of this fact. In order to prevail, Ramos bears the burden of showing that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, Ramos would not have pled guilty, but instead would have insisted on going to trial. See Hill v. Lockhart (1985), 474 U.S. 52, 57-58,88 L.Ed.2d 203, 209-210 (applying to guilty pleas the standards for reviewing claims of ineffective assistance of counsel outlined in Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674);Xie, 62 Ohio St.3d at 524; State v. Dower (Nov. 12, 1998), Lorain App. No. 97CA006953, unreported, at 14-15.
When determining whether counsel's assistance was ineffective, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 80 L.Ed.2d at 694. The reviewing court must view counsel's actions in the light of "the facts of the particular case, viewed as of the time of counsel's conduct." Id., at 690, 80 L.Ed. at 695.
In the instant case, Ramos submitted affidavits from two co-defendants, one of whom averred that Ramos' counsel did not interview him. Both men's affidavits contained versions of the altercation which were potentially exculpatory as to Ramos. Ramos states in his own affidavit that he gave his counsel the names of these co-defendants as potential defense witnesses, that his counsel never interviewed the co-defendants, and that his counsel never advised Ramos that he had not interviewed the co-defendants. To prevail in his allegation of ineffective assistance of counsel, Ramos was required to prove that: (1) counsel's failure to tell Ramos that he had not interviewed these potential witnesses constituted ineffective assistance, and (2) there is a reasonable probability that Ramos would have elected to proceed to trial if his counsel had properly apprised Ramos that he had not interviewed these co-defendants. Hill, 474 U.S. at 57-58,88 L.Ed.2d at 209-210.
Generally speaking, a defense counsel's failure to apprise a client of the important developments in his case constitutes ineffective assistance of counsel. See, generally, State v.Peeples (1994), 94 Ohio App.3d 34, 45. However, a reviewing court must determine that counsel's action or omission was a substantial violation of an essential duty to his client. State v.Cooperrider (1983), 4 Ohio St.3d 226, 228.
The trial court record includes the prosecution's discovery statement that these two co-defendants were interviewed by the prosecution, and that the prosecution made the interview tapes available to defense counsel. There is nothing in the record before this court to indicate that defense counsel did not review the interview tapes. Notably absent from the co-defendants' affidavits is any assertion that their interview statements to the prosecution corroborate their affidavit statements. If these co-defendants' statements to the prosecution were incriminating as to Ramos, it would have been futile for defense counsel to interview these individuals for exculpatory testimony. In that case, counsel's failure to further interview these co-defendants would not have constituted ineffective assistance. This is especially true in light of the fact that the prosecution was also prepared to present at trial other eyewitnesses to the altercation, as well as several BCI personnel who would testify that gunpowder residue was found on Ramos' hands. And, while the better practice would be for counsel to inform his client that he did not interview the co-defendants, this court cannot conclude that such a failure is a substantial violation of counsel's essential duty to his client.
In the alternative, if these co-defendants' statements to the prosecution were exculpatory, and reasonably consistent with their affidavit statements, counsel's failure to interview them may have amounted to ineffective assistance, as would counsel's failure to apprise Ramos that he conducted no interviews. However, neither co-defendant avers that his instant exculpatory version of the altercation is consistent with his statements made in the interview with the prosecution. Ramos asserts that because his counsel did not interview these individuals, counsel was not fully informed of the nature of the case when he advised Ramos to plead guilty. However, absent any evidence to corroborate this claim, this court cannot conclude that, "in light of all the circumstances, [defense counsel's] challenged act or omission fell outside the wide range of professionally competent assistance."State v. DeNardis (Dec. 29, 1993), Medina App. No. 2245-M, unreported, at 4, citing Strickland, 466 U.S. at 690,80 L.Ed.2d at 695.
Ramos has not established that counsel's assistance was ineffective. Therefore, we need not address the second prong in the Hill analysis, whether Ramos would have proceeded to trial if counsel's conduct had been different. Hill, 474 U.S. at 57-58,88 L.Ed.2d at 209-210.
Because Ramos has not established that his plea was less than knowing and voluntary, the trial court acted within its sound discretion in denying his motion to withdraw the plea. This court cannot say that the trial court's decision was unreasonable, arbitrary or unconscionable. Therefore, we overrule Ramos' first assignment of error.
Having overruled both assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 _______________________________ WILLIAM R. BAIRD
FOR THE COURT WHITMORE, J., BATCHELDER, J. CONCUR.
[1] In the body of his brief, Ramos restates the assignment of error thus:
 A PLEA OF GUILTY IS NOT ENTERED KNOWINGLY AND INTELLIGENTLY WHEN THE ATTORNEY ADVISING THE APPELLANT TO ENTER THE PLEA HAD NOT INTERVIEWED THE WITNESSES PROVIDED HIM BY THE CLIENT AS FAVORABLE NOR OTHERWISE BECOME COGNIZANT OF THEIR POTENTIAL TESTIMONY PRIOR TO ADVISING HIS CLIENT TO PLEAD GUILTY.